Sharon G. Lee, J.,
concurring.
I concur fully with the Court’s opinion except for the analysis regarding the proportionality review. In 1997, this Court narrowed the scope of the proportionality review required by Tennessee Code Annotated section 39-13-206(c)(1)(D) by limiting its consideration to only those cases in which the death penalty had been sought. State v. Bland, 958 S.W.2d 651, 666 (Tenn. 1997). A majority of this Court reaffirmed this truncated approach in State v. Pruitt, 415 S.W.3d 180, 217 (Tenn. 2013). In Pruitt, I joined Justice William C. Koch, Jr. in dissenting from the Court’s decision to continue following the Bland approach, as it improperly narrows the proportionality review required by Tennessee Code Annotated section 39-13-206(c)(1)(D). Pruitt, 415 S.W.3d at 230 (Koch and Lee, JJ., concurring and dissenting). We determined that the Court should return to its pre-Bland proportionality analysis by considering “all first degree murder cases in which life imprisonment or a sentence of death has been imposed” and focusing on whether the case under review more closely resembles cases that have resulted in *55 the imposition of the death penalty than those that have not. Id. at 230-31 (Koch and Lee, JJ., concurring and dissenting).
I have performed the broader, pre-Bland review in this case, as I fínd it more consistent with the requirement of Tennessee Code Annotated section 39-13-206(c)(1)(D). Based on a review of all similar first degree murder cases, including those in which the death penalty was not sought, I have concluded that Mr. Hawkins’ personal background and the nature of the capital crime he committed closely resemble the personal backgrounds and the crimes committed by other persons who have received a death sentence than those that have not. Accordingly, as required by Tennessee Code Annotated section 39-13-206(c)(1)(D) and based on the facts in this record, I find that Mr. Hawkins’ death sentence is “[neither] excessive [n]or disproportionate to the penalty imposed in similar cases, considering both the nature of the crime and the defendant.”
APPENDIX
(Excerpts prom the Decision op the Court op Criminal Appeals)
IN THE COURT OF CRIMINAL APPEALS AT OF TENNESSEE AT JACKSON
February 3, 2015 Session Heard at Memphis
STATE OF TENNESSEE v. JAMES HAWKINS
Direct Appeal from the Criminal Court for Shelby County
No. 0806057 Chris Craft, Judge
No. W2012-00412-CCA-R3-DD— Filed August 28, 2015
Thomas T. Woodall, P.J., delivered the opinion of the Court, in which John Everett Williams and Camille R. McMullen, JJ. joined.
Steven C. Bush, District Public Defender; Phyllis Aluko and Barry Kuhn, Assistant-Public Defenders (on appeal); Gerald Ska-han, Larry Nance, and Kindle Nance, Assistant Public Defenders (at trial), for the appellant, James Hawkins.
Herbert H. Slatery III, Attorney General and Reporter; James E. Gaylord, Assistant Attorney General; Amy P. Weirich, District Attorney General; Patience Bran-ham, Marianne Bell, Jennifer Nichols, and Danielle McCollum, Assistant District Attorneys General, for the appellee, State of Tennessee.
OPINION
ANALYSIS

GUILT-INNOCENCE PHASE ISSUES

Admission of Photographs of Bone Fragments

Defendant argues that the trial court erroneously admitted photographs of bone fragments that he claims were gruesome and inflammatory. The State argues that the photographs were in no manner gruesome. The State asserts that they were relevant to Doctor Symes’ testimony concerning the saw used to dismember the victim and that the trial court committed no abuse of discretion by admitting the photographs.
It is within a trial court’s discretion to admit photographic evidence at trial, and this court will not reverse the trial court’s determination absent an abuse of discretion. State v. Banks, 564 S.W.2d *56 947, 949 (Tenn. 1978). However, before a photograph may be admitted into evidence, the relevance of the photograph must be established, and the probative value of the photograph must outweigh any prejudicial effect. State v. Braden, 867 S.W.2d 750, 758 (Tenn. Crim. App. 1993). Doctor Symes testified concerning the manner in which the victim’s feet, hands, and neck/ head were removed. He utilized the photographs of bone fragments to illustrate and explain that the cuts were consistent with having been made by a standard skill saw blade. The photographs were not gruesome in any way and merely showed the forensic samples examined by Doctor Symes as they were packaged in plastic bags. We conclude that the photographs were relevant to the manner in which Defendant dismembered the victim’s body, and we further determine that the admission of the photographs was not outweighed by any prejudicial effect. Accordingly, Defendant is not entitled to relief on this issue.

Alleged Discovery Violation

Defendant argues that the trial court should have excluded crime scene photographs of luminol testing that were not provided during discovery. See Tenn. R.Crim. P. 16(a)(1)(F). The State argues that the record does not establish that a discovery violation occurred and that, assuming the photographs were not provided, Defendant cannot establish any prejudice from the alleged discovery violation.
Tennessee Rule of Criminal Procedure 16(a)(1)(F)(iii) provides, in pertinent part:
Upon a defendant’s request, the state shall permit the defendant to inspect and copy or photograph books, papers, documents, photographs, ... if the item is within the state’s possession, custody, or control and:
[[Image here]]
(iii) the government intends to use the item in its case-in-ehief at trial.
Tenn. R. Crim. P. 16(a)(1)(F)(iii). To enforce the rule, Rule 16(d)(2), provides that if there has been noncompliance, the trial court may order the offending party to permit the discovery or inspection, grant a continuance, prohibit the introduction of the evidence not disclosed or enter such other order as the court deems just under the circumstances. “[T]here is no mandatory exclusion that follows a violation.” State v. Sherri Mathis, M2009-00123-CCA-R3-CD, 2012 WL 4461767, at *37 (Tenn. Crim. App. Sept. 26, 2012), perm. app. denied (Tenn. Feb. 25, 2013). Indeed, exclusion of the evidence is disfavored.
[E]vidence should not be excluded except when it is shown that a party is actually prejudiced by the failure to comply with the discovery order and that the prejudice cannot be otherwise eradicated. See Rule 16(d)(2). The exclusionary rule should not be invoked merely to punish either the State or the defendant for the deliberate conduct of counsel in failing to comply with a discovery order. The court’s contempt powers should be employed for this purpose. Rules 12 and 16, as well as the other Rules of Criminal Procedure [,] were adopted to promote justice; they should not be employed to frustrate justice by lightly depriving the State or the defendant of competent evidence.
State v. Garland, 617 S.W.2d 176, 185-86 (Tenn. Crim. App. 1981); State v. James, 688 S.W.2d 463, 466 (Tenn. Crim. App. 1984); State v. Briley, 619 S.W.2d 149, 152 (Tenn. Crim. App. 1981).
At trial, Defendant objected to the introduction of the photographs during Investigator Garey’s testimony concerning his use *57 of luminol to detect blood evidence in the Prince Rupert apartment. The State asserted that the photographs had been provided during discovery but had possibly shown up very dark on the compact disc provided to Defendant. The trial court took the issue under advisement pending Defendant’s providing the compact disc of discovery items to the court for review and a determinátion of whether the items had, in fact, been provided. The trial court admitted the photographs, and the alleged discovery violation was not revisited until the motion for' new trial hearing.
At the motion for new trial hearing, Defendant maintained that he never received the photographs and that had he received the photographs, he would have been able to refute Investigator Carey’s testimony that luminol testing produced a degradation of DNA material precluding any serology analysis of the Prince Rupert apartment hallway bathroom. The trial court stated
I remember the one thing that came up was that ya’ll said you had received them. The photographs were basically black. They looked like over-exposed photographs that nobody could tell what they were. And when I first saw the one on the screen, I said well, that’s just a— there’s nothing there, but then there was some faint glow or something like that they-testified to.
There is no indication in the record that the trial court ever reviewed the compact disc that was provided to Defendant in discovery.
In our opinion, Defendant failed to establish that a discovery violation occurred relative to the crime scene photographs. Assuming for the sake of argument that the photographs were not provided, we further conclude that Defendant failed to establish any prejudice requiring exclusion of the photographs. Defendant confessed to dismembering the victim’s body in the hallway bathroom. Indeed, during closing argument, defense counsel acknowledged “[o]f course there’s going to be blood and lumin[o]l in [the apartment]. I’d be shocked if they hadn’t found it.” Furthermore, Investigator Garey could have testified regarding the luminol testing and the degradation of DNA evidence without the use of .the photographs, which were only marginally instructive to show the results of the luminol, testing. The overall effect of the photographs is neutral at best. Therefore, Defendant is not entitled to relief on this issue.

Sufficiency of the Evidence

Defendant argues that the evidence is insufficient' to - support ‘ his ' conviction for first degree murder because there is insufficient proof of premeditation, other than the uncorroborated testimony of K.T., whom Defendant characterizes as an accomplice. The State argues that K.T. was not an accomplice and that, therefore, the proof ⅛ more than sufficient to sustain Defendant’s conviction of premeditated first degree murder.
When an accused challenges the sufficiency of the convicting evidence, our standard of review is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). The trier of fact, not this Court; resolves questions concerning the credibility of witnesses and the weight and value to be given the evidence as well as all factual issues raised by the evidence. State v. Tuttle, 914 S.W.2d 926, 932 (Tenn. Crim. App. 1995). Nor may this Court reweigh or re-evaluate the evidence. State v. Cabbage, *58 571 S.W.2d 832, 835 (Tenn. 1978). On appeal, the State is entitled to the strongest legitimate view of the evidence and all inferences therefrom. M. Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this Court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). “[D]irect and circumstantial evidence should be treated the same when weighing the sufficiency of [the] evidence.” State v. Dorantes, 331 S.W.3d 370, 381 (Tenn. 2011).
Premeditated first degree murder is “[a] premeditated and intentional killing of anotherf.]” T.C.A. § 39-13-202(a)(1). Premeditation “is an act done after the exercise of reflection and judgment. ‘Premeditation’ means that the intent to kill must have been formed prior to the act itself. It is not necessary that the purpose to kill pre-exist in the mind of the accused for any definite period of time.” T.C.A. § 39-13-202(d). The element of premeditation is a question of fact to be determined by the jury. State v. Suttles, 30 S.W.3d 252, 261 (Tenn. 2000); State v. Bland, 958 S.W.2d 651, 660 (Tenn. 1997). Premeditation “may be established by proof of the circumstances surrounding the killing,” Suttles, 30 S.W.3d at 261. The Tennessee Supreme Court noted that there are several factors which tend to support the existence of premeditation, including the use of a deadly weapon upon an unarmed victim, the fact that the killing was particularly cruel, declarations of an intent to kill by the defendant, evidence of procurement of a weapon, the making of preparations before the killing for the purpose of concealing the crime, and calmness immediately after the killing. Id.; see Bland, 958 S.W.2d at 660.
Our supreme court recently explained the accomplice corroboration rule as follows
When the only proof of a crime is the uncorroborated testimony of one or more accomplices, the evidence is insufficient to sustain a conviction as a matter of law. State v. Collier, 411 S.W.3d 886, 894 (Tenn. 2013) (citing State v. Little, 402 S.W.3d 202, 211-12 (Tenn. 2013)). This Court has defined the term “accomplice” to mean “one who know.ingly, voluntarily, and with common intent with the principal unites in the commission of a crime.” Id. (citing State v. Bough, 152 S.W.3d 453, 464 (Tenn. 2004); Clapp v. State, 94 Tenn. 186, 30 S.W. 214, 216 (1895)). The test for whether a witness qualifies as an accomplice is “ ‘whether the alleged accomplice could be indicted for the same offense charged against the defendant.’” Id. (quoting Monts v. State, 214 Tenn. 171, 379 S.W.2d 34, 43 (1964)). Although a defendant cannot be convicted solely upon the uncorroborated testimony of an accomplice, “corroborative evidence may be direct or entirely circumstantial, and it need not be adequate, in and of itself, to support a conviction; it is sufficient to meet the requirements of the rule if it fairly and legitimately tends to connect the defendant with the commission of the crime charged.” State v. Bane, 57 S.W.3d 411, 419 (Tenn. 2001) (quoting State v. Bigbee, 885 S.W.2d 797, 803 (Tenn. 1994)). Corroborative evidence must lead to the inferences that a crime has been committed and that the defendant is implicated in the crime. Id.
State v. Jones, 450 S.W.3d 866, 887-88 (Tenn. 2014) (emphasis in original).
The question of who determines whether a witness is an accomplice depends upon the evidence introduced during the course of a trial. Bethany v. State, *59 565 S.W.2d 900, 903 (Tenn. Crim. App. 1978). When the undisputed evidence clearly establishes the witness is an accomplice as a matter of law, the trial court, not the jury, must decide this issue. State v. Lawson, 794 S.W.2d 363, 369 (Tenn. Crim. App. 1990). On the other hand, if the evidence adduced at trial is unclear, conflicts, or is subject to different inferences, the jury, as the trier of fact, is to decide if the witness is an accomplice. Id. Under either scenario, the issue of whether the witness’s testimony has been sufficiently corroborated becomes a matter entrusted to the jury as the trier of fact. State v. Bigbee, 885 S.W.2d 797, 803 (Tenn. 1994).
Notably, Defendant did not request a jury instruction concerning the accomplice corroboration rule. That being said, we agree with the State that K.T. was not an accomplice in this case. The evidence at trial established that twelve-year-old KT. was victimized and controlled by Defendant in the months leading up to the victim’s death. KT. testified that she saw Defendant obtain a small knife from the kitchen, approach the victim in the bedroom, and slit the victim’s throat when the victim threatened to telephone the police. KT. watched in stunned silence as Defendant held the victim until she died. She stated that Defendant then threatened her life if she did not assist him in disposing of the victim’s body. The proof does not establish that K.T. “knowingly, voluntarily, and with common intent with the principal unite[d] in the commission of a crime.” Collier, 411 S.W.3d at 894. To the contrary, the evidence at trial established that KT. was yet another victim of Defendant’s control and domination. Furthermore, even if we were to consider K.T. an accomplice, J.W.I. and J.S.I.’s testimonies, as well as the physical evidence collected at the apartment, all corroborate K.T.’s testimony implicating Defendant in the premeditated first degree murder of the victim. Therefore, we conclude that there is sufficient evidence to support Defendant’s conviction of first degree murder. Accordingly, Defendant is not entitled to relief as to this issue.

SENTENCING PHASE ISSUES

Discovery of Investigation of James Hawkins, Sr.

Defendant contends that the trial court erred by failing to require the State to provide discovery related to the State’s investigation of James Hawkins, Sr., concerning the sexual abuse of Defendant’s sisters. Evoking Brady v. Maryland, Defendant argues that the State’s failure to provide the investigative file deprived Defendant of information relevant to mitigation. He claims that evidence in the file could have established Defendant’s exposure to abuse and violence as a child. The State counters that Defendant has failed to establish prejudice from the denial of access to the prosecution’s investigative file of Defendant’s father because Defendant presented ample evidence of his father’s alleged sexual abuse of Defendant’s sisters.
In Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the United States Supreme Court held that “suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.” Brady, 373 U.S. at 87, 83 S.Ct. 1194. The Tennessee Supreme Court has held that a defendant must show four elements in order to establish a Brady violation by the State:
(1) that the defendant requested the information (unless the evidence is obviously exculpatory, in which case the *60 State is bound to release the information whether requested or not);
(2) that the State suppressed the information;
(3) that the information was favorable to the accused; and
(4) that the information was material.
Johnson v. State, 38 S.W.3d 52, 56 (Tenn. 2001).
“Evidence ‘favorable to an accused’ includes evidence deemed to be exculpatory • in nature and evidence that could be used to impeach the State’s witnesses.” Id. at 55-56 (emphasis added). “Evidence is deemed to be material when ‘there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.’ ” Id. at 58 (quoting State v. Edgin, 902 S.W.2d 387, 390 (Tenn. 1995)). In determining whether a defendant has adequately proven the materiality of favorable evidence suppressed by the State, “a reviewing court must determine whether the defendant has shown that ‘the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine the confidence of the verdict.’ ” Johnson, 38 S.W.3d at 58 (quoting Irick v. State, 973 S.W.2d 643, 657 (Tenn. Crim. App. 1998)).
Ms. Stanback, the mitigation specialist, testified concerning Mr. Hawkins’ sexual abuse of Defendant’s sisters. Likewise, she also testified concerning the pending criminal investigation. Ms. Thomas, Defendant’s mother, testified that she had only recently learned of the sexual abuse allegations and that Defendant’s father was only involved in a limited fashion during Defendant’s childhood. Under these circumstances, we agree that Defendant has failed to establish the materiality of the pending criminal investigation. Accordingly, Defendant is not entitled to- relief as to this issue.

Special Requested, Jury Instruction Regarding Presumptive Sentences

Defendant argues that the trial court should have instructed the jury-that “they were to presume that a life sentence, a sentence of life without the possibility of parole, and a death sentence would be carried out in accordance with the laws of the state.” The State correctly notes that this issue has been ruled to be without merit. State v. Thomas, 158 S.W.3d 361, 389-90 (Tenn. 2005).

Constitutional Attacks on the Death Penalty

Defendant makes myriad constitutional arguments concerning Tennessee’s death penalty statute in general, as well as the imposition of the death penalty in this case. Although not raised in this order in Defendant’s brief, we will address each one in turn for the sake of clarity and cogency of our discussion.
Defendant argues that Tennessee Code Annotated section 40-23-114, concerning the implementation of a lethal injection protocol, is an unconstitutional delegation of legislative authority to the executive branch by permitting “the department of correction ... to promulgate necessary rules and regulations to facilitate the implementation” of a death sentence. T.C.A. § 40-23-114(e). The State argues that the legislature has determined a conviction of first degree murder accompanied by aggravating circumstances is punishable by death and that the method of execution shall be lethal injection. Allowing the department of correction to establish a protocol for the implementation of lethal injection does not constitute an unconstitutional delegation of legislative *61 authority. See Abdur’Rahman v. Bredesen, 181 S.W.3d 292, 309-310 (Tenn. 2005) (holding that the department of correction may be tasked with determining protocol without violating substantive or procedural due process).
Defendant argues that Tennessee Code Annotated section 39-13-204(h), the unanimity requirement of the capital sentencing statute, is unconstitutional because it precludes an instruction regarding the effect of a failure to agree on punishment. The State fails to address this argument. In any event, this issue has been held to be without merit. State v. Vann, 976 S.W.2d 93, 118 (Tenn. 1998).
Citing to Apprendi v. New Jersey, 530 U.S. 466, 494, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), Defendant argues that the aggravating circumstances sought by the State to support the imposition, of the death penalty must be indicted by the grand jury. The State correctly notes that this issue has been ruled to be without merit. Thomas, 158 S.W.3d at 389-90.
Defendant argues that the trial court’s use of the pattern instruction concerning victim impact evidence amounted to an unconstitutional intrusion into the province of the jury. The State correctly notes that this issue has been ruled to be without merit. State v. Banks, 271 S.W.3d 90, 171-72 (Tenn. 2008).
Defendant argues that the death sentence is arbitrary and disproportionate. Specific to the application of aggravating circumstances in this case, he contends that the sentence is arbitrary because the trial court failed to determine whether his prior convictions for aggravated assault involved the use of violence as required by State v. Sims, 45 S.W.3d 1 (Tenn. 2001). The State correctly notes that Defendant failed to avail himself of a Sims hearing when offered by the trial court, and thereby waived any objection to the consideration of the aggravated assault convictions as prior violent felonies. In any event, the ten remaining aggravated robbery convictions would render the inclusion of the seven aggravated assault convictions harmless error, if error at all.
Defendant also contends that the death sentence is disproportionate when compared to a broadened pool of first degree murder cases. This challenge to the appellate review of capital cases have also been rejected. State v. Cazes, 875 S.W.2d 253, 270-71 (Tenn. 1994) (rejecting certain arguments concerning proportionality review); State v. Pruitt, 415 S.W.3d 180 (Tenn. 2013) (refusal to broaden the pool of cases considered in proportionality review).
Defendant challenges the constitutionality of the death penalty in that aggravating circumstances (i)(2), (i)(5), (i)(6), and (i)(7) fail to narrow meaningfully the class of eligible offenders. The State correctly notes that Defendant lacks standing to object to the application of circumstances (i)(5), (i)(6), and (i)(7) because they were neither sought nor found his case. As to his challenge to the application of (i)(2), that the aggravating circumstance is overbroad because it has been construed to include as a prior conviction any conviction which occurs prior to the sentencing hearing regardless of whether the offense occurred prior to the first degree murder for which the defendant is being sentenced, this argument must also fail. State v. Nichols, 877 S.W.2d 722, 736 (Tenn. 1994). Furthermore, we note that the prior convictions that were utilized in this case concerned offenses that occurred years before the present offenses and, therefore," fall squarely into that category of prior convictions to which Defendant *62 seeks to limit the application of the circumstance.
Defendant contends that prose-cutorial discretion in seeking the death penalty results in the unconstitutional and discriminatory imposition of the death penalty. This argument has been rejected. Banks, 271 S.W.3d at 155-58.
Finally, Defendant contends that the pattern jury instructions create the mistaken belief that jurors must agree unanimously on mitigating circumstances. This challenge to the pattern jury instruction has likewise been rejected. Banks, 271 S.W.3d at 159.

Sentencing on Related Felonies

Defendant argues that the trial court’s imposition of sentences for the remaining felonies is excessive in both length and manner of service. At the sentencing hearing concerning the false report and abuse of a corpse convictions, the trial court sentenced Defendant as a Career Offender to a total effective sentence of 18 years. The trial court also ordered the sentences to be served consecutively based upon its findings that Defendant was a professional criminal and qualified as a dangerous offender.
First, Defendant argues that the State’s notice to seek enhanced punishment was misleading because the notice cited to the code section concerning Career Offender but indicated in the language of the notice that the State sought to sentence Defendant as a Persistent Offender. The State argues that the typographical inconsistency on the notice to seek enhanced punishment did not render it invalid and, in any event, Defendant stipulated at the penalty phase of the trial the accuracy of his criminal history.
The purpose of the notice requirement is to provide a defendant with “fair notice” that he is “exposed to other than standard sentencing.” State v. Adams, 788 S.W.2d 557 (Tenn. 1990). It is intended to facilitate plea-bargaining, to inform decisions to enter a guilty plea, and to assist with decisions regarding trial strategy. When a detail of the required information is omitted or incorrect, the inquiry should be whether the notice was “materially misleading.” Id. at 559. The supreme court specifically held that “when the State has substantially complied with Section 40-35-202(a), an accused has a duty to inquire about an ambiguous or incomplete notice and must show prejudice to obtain relief. But it is the State’s responsibility to assert the appropriate sentencing status in the first instance, and it may not shift these burdens to an accused by filing what is essentially an empty notice.” Id. (emphasis added).
The record reflects that Defendant did not challenge the notice to seek enhanced punishment and, in fact, stipulated the accuracy of his prior convictions at the penalty phase of the first degree murder trial. Based upon this stipulation, the trial court sentenced Defendant as a Career Offender. We conclude that the notice to seek enhanced punishment was not materially misleading. Defendant is not entitled to relief on this issue.
Next, Defendant contends that the record does not support the trial court’s determination that he is a professional criminal. The State acknowledges that the record does not support the trial court’s finding of professional criminal but argues that the record supports the trial court’s alternative determinations that Defendant possessed an extensive history of criminal convictions and that he was a dangerous offender, justifying the imposition of consecutive sentences in this case.
*63 Our supreme court has held that “the abuse of discretion standard, accompanied by a presumption of reasonableness, applies to consecutive sentencing determinations” “if [the trial court] has provided reasons on the record establishing at least one of the seven grounds listed in Tennessee Code Annotated section 40—35—115(b)[.]” State v. Pollard, 432 S.W.3d 851, 859-62 (Tenn. 2013). Thus, the imposition of consecutive sentencing is subject to the general sentencing principles that the overall sentence imposed “should be no greater than that deserved for the offense committed” and that it “should be the least severe measure necessary to achieve the purposes for which the sentence is imposed[.]” T.C.A. § 40-35-103(2) and (4). Further, “[s]o long as a trial court properly articulates reasons for ordering consecutive sentences, thereby providing a basis for meaningful appellate review, the sentences will be presumed reasonable and, absent an abuse of discretion, upheld on appeal.” Pollard, 432 S.W.3d at 862 (citing Tenn. R. Crim. P. 32(c)(1) (“The order [for consecutive sentences] shall specify the reasons for this decision and is reviewable on appeal.”)); see also State v. Bise, 380 S.W.3d 682, 705 (Tenn. 2012). The application of an abuse of discretion with a presumption of reasonableness standard of review when considering consecutive sentencing based upon the “dangerous offender” category in T.C.A. § 40-35-115(b)(4) does not eliminate the requirements of State v. Wilkerson, 905 S.W.2d 933 (Tenn. 1995) that the “proof must also establish that the terms [of sentencing] imposed are reasonably related to the severity of the offenses committed and are necessary in order to protect the public from further criminal acts by the offender.” Pollard, 432 S.W.3d at 863 (quoting Wilkerson, 905 S.W.2d at 938).
Tennessee Code Annotated section 40-35-115(b) provides that a trial court may order sentences to run consecutively if it finds any one of the following criteria by a preponderance of the evidence:
(1) The defendant is a professional criminal who has knowingly devoted the defendant’s life to criminal acts as a major source of livelihood;
(2) The defendant is an offender whose record of criminal activity is extensive;
(3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant’s criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;
(4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;
(5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant’s undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;
(6) The defendant is sentenced for an offense committed while on probation; or
(7) The defendant is sentenced for criminal contempt.
T.C.A. § 40-35-115(b).
These criteria are stated in the alternative; therefore, only one need exist to support the appropriateness of consecutive *64 sentencing. Here, the trial court applied factors (1), (2), and (4) that Defendant is a professional criminal who knowingly devoted his life to criminal acts as a major source of his livelihood, an offender whose history of criminal activity is extensive, and a dangerous offender whose behavior indicates little or no regard for human life. Because the trial court provided reasons on the record establishing two of the statutory grounds for consecutive sentencing— extensive criminal history and dangerous offender—we afford the trial court’s decision a presumption of reasonableness. Furthermore, the record shows that the trial court followed the principles and purposes of the Sentencing Act, and the record supports the trial court’s findings. We conclude that the trial court did not abuse its discretion by ordering Defendant’s sentences to run consecutively. Accordingly, Defendant is not entitled to relief on this issue.

Denial of Petition for Writ of Error Coram Nobis

On October 30, 2013, while this appeal was pending, Defendant filed a petition for writ of error coram nobis in the trial court alleging that previously undisclosed DNA testing of fetal tissue collected at K.T.’s hospitalization for the December 2007 miscarriage and the State’s subsequent indictment of James Hawkins, Sr., for multiple instances of sexual abuse committed against Defendant’s sisters warranted coram nobis relief in the form of a new trial. Following a hearing, the trial court denied relief, concluding that the DNA testing result, which was inconclusive as to paternity, would not have resulted in a different judgment had it been presented at trial and that the evidence concerning Defendant’s father’s history of sexually abusing Defendant’s sisters was known and presented at trial as mitigation evidence.
On appeal, Defendant argues that the trial court erred in denying coram nobis relief. The State argues that the DNA evidence was inconclusive as to paternity and, therefore, could not reasonably affect the outcome of the trial; and that the evidence concerning Defendant’s father was known and presented at trial and, therefore, does not qualify as newly discovered pursuant to the coram nobis statute.
A writ of error coram nobis is a very limited remedy which allows a petitioner the opportunity to present newly discovered evidence “which may have resulted in a different verdict if heard by the jury at trial.” Workman v. State, 41 S.W.3d 100, 103 (Tenn. 2001); see also State v. Mixon, 983 S.W.2d 661 (Tenn. 1999). The remedy is limited “to matters that were not and could not be litigated on the trial of the case, on a motion for new trial, on appeal in the nature of a writ of error, on writ of error, or in a habeas proceeding.” T.C.A. § 40-26-105. Examples of newly discovered evidence include a victim’s recanted testimony or physical evidence which casts doubts on the guilt of the Petitioner. Workman, 41 S.W.3d at 101; State v. Ratliff, 71 S.W.3d 291 (Tenn. Crim. App. 2001); State v. Hart, 911 S.W.2d 371 (Tenn. Crim. App. 1995). The Supreme Court has stated the following concerning the standard to be applied when a trial court reviews a petition for writ of error coram nobis:
[T]he trial judge must first consider the newly discovered evidence and be “reasonably well satisfied” with its veracity. If the defendant is “without fault” in the sense that the exercise of reasonable diligence would not have led to a timely discovery of the new information, the trial judge must then consider both the evidence at trial and that offered at the *65 coram nobis proceeding in order to determine whether the new evidence may-have led to a different result.
State v. Vasques, 221 S.W.3d 514, 527 (Tenn. 2007). Whether to grant or deny a petition for writ of error coram nobis rests within the sound discretion of the trial court. Id. at 527-28.
The record reflects that the DNA testing neither excluded nor established Defendant’s paternity because the testing yielded no evidence of paternal DNA. We agree with the trial court that such inconclusive results, when viewed in light of the testimony presented at trial that K.T, suffered a miscarriage and that Defendant was the person who impregnated her, would not have resulted in a different outcome if presented at trial. See, e.g., Antonio Leonard Sweatt v. State, M2006-00289-CCA-R3-PC, 2007 WL 1364651 (Tenn. Crim. App., at Nashville May 9, 2007), perm. app. denied (Tenn. Sept. 24, 2007) (inconclusive DNA results do not warrant coram nobis relief. As to Defendant’s claim concerning his father’s subsequent indictment for sexually abusing Defendant’s sisters, the evidence presented at trial concerning the sexual abuse supports the trial court’s findings that this evidence does not qualify as newly discovered. Therefore, we conclude that the trial court did not abuse its discretion by denying coram nobis relief. Defendant is not entitled to relief as to this issue.

Cumulative Error

Defendant argues that the cumulative effect of the alleged errors entitle him to a new trial. Because we conclude any error was harmless beyond a reasonable doubt, we further conclude that Defendant’s due process rights were not violated by any cumulative effect of the alleged errors.